### Application of UNITED PARCEL SERVICE, Inc.

Docket No. 780380-CCT(Ex. Order No. 15287.

Florida Public Service Commission.

May 15, 1979.

James D. Beasley, Tallahassee, and George P. Williams, III, Philadelphia, Penna., for the applicant.

John P. Bond, Coral Gables, for Harper's Florida Courier Service, Comet Courier Service, Inc., Sands Delivery, Inc., Allied Parcel Service, Inc. and Choice Delivery Service, Inc. protestants.

The following commissioners participated in the disposition of this matter — GERALD L. GUNTER, JOSEPH P. CRESSE, JOHN R. MARKS, III, and WILLIAM T. MAYO.

BY THE COMMISSION.

Pursuant to notice, the commission by its duly designated chief hearing examiner, H. E. Smithers, held public hearings on this matter in Miami on September 5, 6 and 7, and November 6, 1978.

Applicant United Parcel Service, Inc. (UPS) seeks to remove a restriction in its Certificate No. 1017 which prohibits the transportation of packages within Dade County. This restriction was in the certificate at the time it was obtained by transfer from Rapid Delivery Service which had obtained it by transfer shortly after the entry of Order Nos. 4428 and 4428-A. The threshold question is whether or not those orders are still applicable in any event, or may the restriction be removed by a showing of public convenience and necessity. The protestants in their brief contend, for the first time, that under the Administrative Procedures Act the orders are effective until the commission cancels them after notice and hearing involving the carriers that were affected by those orders. This is a tenuous argument at best, and is without merit.

Admittedly, those 1959 orders did purport to establish a comprehensive parcel delivery system for the three "Gold Coast" counties by limiting carriers to the transportation within Dade County only or Broward/Palm Beach counties only with required interchange of parcels through the adoption of uniform rates applicable to those carriers. Past events, however, have terminated that concept. Specifically, one of the several carriers involved in Orders 4428 and 4428-A, Royal Fleet Service, sought to transfer its Dade-Broward-Palm Beach County authority to Florida United Parcel Service, Inc.; however, Rapid Delivery was substituted as the transferee (Docket No. 5162) with the result that Rapid accepted the authority with the intra-Dade County restriction (Order Nos. 4824, 4854 and 5090). On subsequent transfer to UPS (Docket No. 69365), the intra-Dade County restriction, among others, was carried forward; however, the additional, new language of "during the effective life of the interchange system implemented by this commission in its Order Nos. 4428 and 4428-A" was added (Order Nos. 8606, 8606-A and 8658). Simultaneously, the commission

approved UPS' tariff which effectively precluded the interchange of parcels with the Dade County carriers because of differing rates and service features. UPS does not interchange with any other carrier. In summary, Orders 4428 and 4428-A are no longer applicable to any party to that decision: carriers have gone out of the parcel carrier business, merged or have been granted extended authority; the Parcel Carrier Conference (née Association) implemented a uniform parcel carrier tarriff which has, since approval of the separate UPS tariff, continued to become fragmented; and, the parcel carrier rules (Part III, Rule Chapter 25-5, F.A.C., 1969) adopted the interchange concept in the orders involved (25-5.80). The only interchange that has occurred in the recent past have been between Jack Rabbit and Allied/Sands; and even in this instance Jack Rabbit was permitted by application for extension of authority to terminate that relationship (Docket No. 770463; Order Nos. 14165, 14574. See also Docket No. 760658, Order No. 14517; Docket No. 760446, Order No. 14258; and as to Harper's, Docket No. 790241, Order No. 14878).

UPS suggests that the restriction may be removed without further findings since the "effective life" has long since expired. However, as noted above, "effective life" was added on the transfer to UPS and does not affect the restriction against making intra-Dade County shipments. Only a finding of public convenience and necessity and absence of adverse effect may affect the requested grant of authority.

UPS is a well-known specialized parcel carrier and no one questions its ability, financially and otherwise, to provide service within Dade County. Its service is next day (versus same day), therefore the protests of Choice and Comet, which essentially provide same day service, are without weight. Further, the average weight of all UPS packages (each package is a shipment) is eleven pounds, and Allied/Sands only object to a grant over ten pounds. As to Harper's, it has a rate advantage on over sixteen pound shipments and multiple package shipments while UPS only has advantage on under sixteen pound single packaged shipments.

UPS presently makes pick-ups at 2,000 business locations in Dade County on movements to and from Dade County, and these are the basic shippers for which Dade deliveries are sought to be made. However, many shippers do bring shipments to the UPS counters. Jordan Marsh in Dade County even takes its 500-650 weekly Dade deliveries to UPS' Broward terminal so they can be delivered as a non-intra Dade pickup and delivery (Tr. 194-5).

The parties stipulated that parcel post, bus express and general commodity carriers could not satisfy the requirements of the Dade

intra-county shippers' needs for one reason or another. Generally, the services offered by UPS are totally different from that offered by these three types of transporters.

In further comparing services offered by UPS vis-a-vis Harper's or Allied/Sands, those protestants attempted to show that their services are either equal, the same as or superior to UPS. However, it appears that these protestants have not been following many service features contained in the applicable tariff, therefore the services can not be the same, nor are they competitive. This is to say that UPS appears to be truly seeking to provide an alternative to parcel post while the protestants have chosen not to; rather they have catered to certain segments of the business community. For example, Comet has 25-35 regular customers, Harper's has 75 and Allied/Sands has 125 as compared to UPS's 2,000. Additionally, Harper's gives a lower rate to certain customers who would not use UPS in any event.

UPS presented representatives of 25 businesses in support of the application; stipulation was made that eight more were present to support the application. The businesses were typical UPS, parcel post, small package shippers/receivers. Without exception, they desired an alternative to parcel post and wanted to use UPS within Dade County as well as to and from. While only five companies had used Harper's, nearly all had used Allied/Sands. The complaints, particularly lodged against the latter carrier, were slow pickups, delayed deliveries, non-uniformed drivers and vehicles, low insurance, burdensome documentation and no credit unless $25 minimum billing a month. Unrefuted complaints against Harper's (as well as Allied/Sands) involved service to Turkey Point and Flamingo; generally, the majority of witnesses had not heard of or used Harper's.

Protestants Comet, Harper's and Allied/Sands presented evidence related to their authority, facilities, equipment and operations. In addition to evidence they presented as noted above, Comet and Allied/Sands contend the grant of authority would put them out of business because of UPS' well-known name and service. Allied/Sands stated that they would not have purchased an expensive computer system to improve their service had they known about the filing of the application; further, if the application is granted in total, they will gradually shut down and cease business within six weeks. Although Allied and Sands said they were going to file a joint application to consolidate their authority and operations (see Show Cause Docket No. 780361), such has not been done. On the other hand, Harper's owner has been a strong competitor of UPS in the three county area as well as other points in

the United States (through other companies). Harper's recent extension and the threatened shut down of Allied/Sands will negate any adverse effect the grant of this application may have on it. It should be noted parenthetically that Harper's corrected its service features' tariff problems by subsequently filing an amendment to its tariff on September 20, 1978, but Allied/Sands has not.

From the foregoing, the commission concludes that —

1. As to the grant of authority, existing transportation is not adequate to meet reasonable public needs.

2. There is present necessity for the authority in terms of existing and projected traffic volume.

3. The applicant possesses the necessary financial ability to provide the transportation.

4. Existing transportation facilities and services will not be impaired by grant of the authority.

5. The applicant is fit to provide the proposed service and is capable of complying with Florida transportation law.

6. The proposed transportation service is feasible.

It is therefore ordered that the application of United Parcel Service, Inc. for extension of Certificate No. 1017 be granted and Certificate No. 1017 be reissued to read as follows: Authorizing the transportation as an irregular route motor common carrier to, from and between all points and places in the state of Florida, operating on irregular schedules to meet the demand of shippers between operating center and surrounding points in operating center areas, and on regular schedules between operating centers and between operating center and hubs, of general commodities in a parcel delivery service [except (1) Class A and B explosives; (2) household goods; (3) commodities which require special equipment because of their size; and (4) commodities in bulk], restricted against transportation of any package or article weighing more than 50 pounds or exceeding 108 inches in length and girth combined, with each package or article considered a separate and distinct shipment; further restricted against transportation of packages or articles weighing in the aggregate more than 100 pounds from one consignor at one location to one consignee at one location on any one day.